IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
ROBERT E. HUNTER, D.V.M.; HOWARD  )   2:06-cv-00457-GEB-EFB
ELEY,                             )
                                  )   ORDER*
            Plaintiffs,           )
                                  )
       v.                         )
                                  )
COUNTY OF SACRAMENTO; LOU BLANAS, )
in his individual capacity; and   )
SHERIFF JOHN MCGINNIS in his      )
official capacity,                )
                                  )
            Defendants.**         )
_____)
```

On June 13, 2008, Defendants County of Sacramento, Sheriff John McGinnis in his official capacity and Lou Blanas ("Blanas") in his individual capacity (collectively "Defendants") filed a motion for

---

    *    This matter was determined to be suitable for decision without oral argument.  L.R. 78-230(h).

    **   The case caption has been changed to reflect the holdings in this Order and the Court's September 29, 2006 Order.

1

summary adjudication of Plaintiffs' third and fourth claims in Plaintiffs' Second Amended Complaint.[1]  Defendants also seek dismissal of all class action allegations, Doe Defendants (claim one) and Defendant William Kevin Sowles (claim two).  Plaintiffs Robert Hunter ("Hunter") and Howard Eley ("Eley") oppose the summary adjudication motion, but have not opposed the dismissal motions. (Opp'n at 1:23-26.)

The Order Setting Status (Pretrial Scheduling) Conference filed March 6, 2008, required Plaintiffs to justify keeping allegations against Doe Defendants in the action and warned that failure to provide justification could result in the Doe Defendants being dismissed; since said justification has not been provided, and the discovery and law and motion deadlines have past, the Doe Defendants are dismissed.

Further, the Status (Pretrial Scheduling) Order filed November 17, 2006, provided Plaintiffs notice under Rule 4(m) of the Federal Rules of Civil Procedure that if Defendant William Kevin Sowles was not served with the Second Amended Complaint on or before December 20, 2006, he would be dismissed from this action for failure to serve process within Rule 4(m)'s 120-day service period unless Plaintiffs filed on December 21, 2006 either a proof of service or an explanation of good cause why Sowles should not be dismissed.  To date, Plaintiffs have not filed anything required by the Order and there is no indication whatsoever that Sowles has been served or will be served; therefore, Sowles is dismissed from this action.

---

[1]    The official capacity suit is not separately discussed since the claims are duplicate of the claims against the County.

In addition, since Plaintiffs failed to file a motion to certify a class action as prescribed in the Status (Pretrial Scheduling) Order filed November 17, 2006, Plaintiffs' class action claims are dismissed.

BACKGROUND[2]

Hunter was arrested for driving under the influence on September 17, 2005. (Second Am. Compl. ¶ 9.) While at the Sacramento County Main Jail detox holding center, Hunter saw the toilet he desired to use was clogged and overflowing; therefore, he signaled to sheriff deputies to inform them of the toilet's condition and to request access to another toilet. (Id. ¶¶ 26-27.) Several unknown deputies responded by throwing him on the floor and applying force that resulted in a fractured elbow, stretched tendons, and nerve damage. (Id. ¶¶ 33, 28.) In addition, Hunter feared his safety would be threatened if he asked to use a telephone. (Hunter Decl. ¶ 32.)

Eley was incarcerated in the Main Jail on or about March 21, 2004, where Eley and then-deputy sheriff Sowles had a verbal disagreement, following which Sowles shoved, slapped and then chocked Eley without provocation. (Second Am. Compl. ¶¶ 11, 48.)

Plaintiffs allege in their third claim that the excessive force to which they were subjected, in violation of their rights under 42 U.S.C. § 1983, was ratified in an unwritten policy allowed to exist by the County of Sacramento and former County of Sacramento Sheriff Lou Blanas, and that this policy has resulted in other detainees being subjected to excessive force in the County's Main Jail, and led to Hunter and Eley's injuries. (Compl. ¶¶ 63, 99, 100, 122, 126.)

---

[2] The background facts are stated in the light most favorable to Plaintiffs under the summary judgment standard.

1    Plaintiffs allege in their fourth claim that their liberty
2 interests, and the liberty interests of other inmates, were violated
3 when the County of Sacramento and former Sheriff Lou Blanas ratified a
4 policy preventing them from making phone calls.  (Id. at ¶¶ 148, 155,
5 158, 164.)

SUMMARY JUDGMENT STANDARD OF REVIEW

7    When considering a summary judgment motion, the facts are
8 viewed in the light most favorable to the non-moving party and
9 reasonable inferences are drawn in the non-movant's favor.  Devereaux
10 v. Abbey, 263 F.3d 1070, 1086 (9th Cir. 2001).

ANALYSIS

I.  Third Claim

 A.  Against the County of Sacramento

14    The County argues it is entitled to summary judgment because
15 it "has established specific [constitutional] policies [and training]
16 regarding both the general treatment of persons incarcerated and,
17 specifically, with respect to the use of force."  (Mot. at 6:24-7:3
18 (citing Main Jail Operations Orders 1/30 and 3/11).)  Plaintiffs argue
19 this evidence is not relevant, contending that the policies have not
20 been shown to have been in effect at the time of Plaintiffs'
21 incarceration.  However, the County provides the declaration of Dawn
22 Douglas in which she declares that the policies were in effect in 2004
23 and 2005.  (Supp. Douglas Decl. ¶ 3.)  In addition, the County
24 presents evidence the policies were in effect before 2004 since the
25 policies attached to the Douglas declaration contain notations that
26 they were revised in 1998 and 2002.  (Douglas Decl. Exs. A, B, C.)
27 Therefore, Plaintiffs' objection is overruled.  Defendants have shown

4

that the County's formal written policies prohibit the use of excessive force.

Plaintiffs counter with the declarations of Hunter, Eley, Austin Chase ("Chase") and their expert Lieutenant Timothy Twomey (retired) ("Twomey"), arguing these declarations show, notwithstanding the County's written policies and training, that the County had an unwritten policy at the County Main Jail which allowed the use of excessive force. (Opp'n at 2:5-15.)

> Municipal entities are subject to [42 U.S.C. § 1983] liability where "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." A direct causal link between departmental policy or custom and the alleged deprivation is therefore required. Plaintiff may establish municipal liability by proving that the violation was committed pursuant to a formal departmental policy or a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity."

Afshar v. City of Sacramento, 2006 WL 768823, at *3-4 (E.D. Cal. Mar. 27, 2006) (as amended) (quoting first Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)) (quoting second Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989)). A policy "may be inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded[.]'" Nadell v. Las Vegas Metro. Police Dep't, 268 F.3d 924, (9th Cir. 2001) (reversed on other grounds) (quoting Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir. 1992)). For instance, in Henry v. County of Shasta, 132 F.3d 512, 518-519 (9th Cir. 1997) as amended, 137 F.3d 1372 (9th Cir. 1998), a triable issue was found to exist since evidence was "presented that the county acted in accordance with an

established policy or deliberate indifference to violation of rights by stripping and detaining in rubber rooms persons stopped for minor, non-jailable traffic offenses who refuse to sign a notice to appear, or demand to be taken before a magistrate." Henry concerned evidence of incidents over a seven-year period, beginning in 1985 when Henry received the same alleged treatment he allegedly received in 1993 at issue in the lawsuit, and also two other detainees who received the same treatment subsequent to Henry's alleged experience in 1993. The Ninth Circuit found that the County was put on clear notice that constitutional violations had occurred but failed to reprimand the officers involved.

Plaintiffs' expert witness Twomey is a former County of Sacramento Sheriff's Department Lieutenant and is proffered as an expert on law enforcement management procedures, investigations, and use of force. (Twomey Decl. ¶¶ 4, 63, 88.) Twomey opines that "there were approximately 40 to 50 major incidents of some type of excessive force at the Main Jail between 2000 and September 17, 2005, the date Plaintiff Hunter was injured in Detox[; Towmey explains] 'Major' incident means some form of taking down an inmate or detainee . . ." (Id. ¶¶ 562, 572, 567.) Twomey further opines "there exists at the main jail an informal policy condoning the use of excessive force on jail inmates." (Id. ¶ 585.)

The County objects to Twomey's opinion regarding an "informal policy" arguing it is conclusory and lacks factual basis. The burden of showing the lack of foundation for Twomey's opinions rests squarely on the shoulders of the County. Under the summary judgment standard, the portions of Twomey's declaration discussed below have not been shown to lack sufficient foundation. Twomey

1  opines there were several instances of excessive force which the
2  county condoned.  He discusses seven "similar" cases of excessive
3  force over the last five years, some of which he opines were either
4  approved of, not investigated, or went unpunished by the County
5  Sheriff's Department; and instances of excessive force witnessed by
6  declarants Hunter, Eley and Chase.  (See e.g. Twomey Decl. ¶¶ 100,
7  152, 477, 562, 567, 569.)
8      Twomey's opines that Hunter, Eley and Chase describe
9  "identical incidents, independent of the other, with common facts on
10 the use of take downs [of detainees]."  (Id. ¶ 134.)  Twomey declares
11 all these incidents involved "throwing a man to the floor, twisting
12 both arms behind the back while pulling upward with the legs bent back
13 and/or held in place while the person is on their stomach.  Then, what
14 follows, deputies commence to punch and/or kick a person who is
15 already immobilized with an unauthorized control hold."  (Id.)  Twomey
16 discusses Hunter's declaration where Hunter declares: "[d]uring my
17 stay, no less than 8 different officers used a method of force which
18 consisted of twisting a detainee's arms behind their back, and
19 simultaneously applying pressure to both by twisting and lifting the
20 arms. . . ."  (Hunter Decl. ¶ 20.)
21     Twomey also discusses Eley's declaration in which Eley
22 declares from roughly June 18, 2003 to March 15, 2008, he witnessed
23 fifteen to twenty take-downs on inmates.  (Eley Decl. ¶ 9, 11.)  Eley
24 further declared "[t]he most common theme to take-down an inmate by
25 deputies was for them to just throw the inmate to the hard floor face
26 first, and several deputies would twist both arms of the inmate behind
27 the back while holding the legs.  Always, the inmate taken down would
28 scream with obvious pain, and the deputies would not stop.  In fact,

1  the more the inmate struggled to stop the pain, the more the deputies
2  would twist both arms." (Id. ¶ 10.)
3      Twomey also discusses the declaration of Chase, who declared
4  during the twenty days he was at the Main Jail in September of 2005 he
5  witnessed four or five "identical events" "whereby the detainees were
6  thrown down hard on the floor while both arms are pulled up behind
7  their back . . . ."   (Chase Decl. ¶¶ 23, 31.)
8      Twomey declared that the statements of Hunter, Eley and
9  Chase "are corroborated by actual videos" produced in the following
10 matters involving excessive force against arrestees: Jafar Afshar,
11 Michael Hay and Mihaita Constantin.  (Twomey Decl. ¶ 152.) Twomey
12 avers the Hay incident occurred in 2000,the Afshar and Constantin
13 incidents in 2003, the Eley incident occurred in 2004, and Chase and
14 Hunter in 2005. (Id. ¶ 569.)
15     Twomey explains he provided expert witness testimony in the
16 excessive force case involving arrestee Afshar.  (Id. ¶ 2.)  Twomey
17 reviewed a video taken of the incident in the booking area of the Main
18 Jail.  (Id. Ex. W.)  Twomey opines that at no time did Afshar pose a
19 threat; however, Deputy Brett Spaid grabbed Afshar from behind, threw
20 him backward onto the floor causing him to smash his head on the floor
21 and then spun him onto his stomach where Spaid and another deputy both
22 applied the felony handcuffing (double wrist locks).  (Id. ¶¶ 207-10,
23 239, 226.)  Twomey opined that the take-down and the double wrist lock
24 were both unnecessary and unwarranted and amounted to excessive force.
25 (Id. ¶¶ 239, 240, 247.)
26     Spaid testified that the take-down was in complete
27 compliance with departmental use of force polices.  (Id. ¶ 377.)
28 Twomey further declared a high-ranking sheriff deputy official

reviewed the tape during a deposition in the Afshar case and said he could not determined whether excessive force had been used and did not question the control technique. (Id. ¶¶ 160, 378.) After the incident, Afshar filed a citizen/IA complaint that he had been beaten in the Main Jail. (Id. ¶¶ 139, 474.) According to Twomey, Department policies require an Internal Affairs ("IA") case number and investigator be assigned after any complaint but that neither was done. (Id. ¶¶ 379, 380, 388.) Twomey declared that a manager would usually review the PF10 incident report and the video; Twomey opined what he reviewed showed that an IA investigation was warranted. (Id. ¶ 237.) After reviewing the video, a Sheriff's Department official deposed in the Afshar case admitted an IA case should have been opened and investigated but was not. (Id. ¶ 378.) Twomey further declared he saw Blanas reviewing the Afshar video on television and not taking any action but saying that it was not suppose to happen. (Id. ¶ 474.)

Twomey reviewed the discovery responses and video in the excessive force case involving Constantin. (Id. ¶ 100, Ex. T.) Constantin was booked for driving under the influence. (Id. ¶ 119.) Twomey declares the video shows Deputy Mason grabbing Constantin for an unknown reason and then throwing him to the ground, after which four other deputies "join the fray," during which the felony wrist lock technique was applied. (Id. ¶¶ 391, 392, 402.) Consequently, Constantin suffered a fractured nose and hand. (Id. ¶ 119.)

Twomey declared in his experience, there is no doubt that the matter should have been investigated as Constantin was diagnosed in the emergency room with a broken hand and nose and not a single officer was injured; yet no IA investigation resulted. (Id. ¶¶ 105, 137, 406.)

Twomey also reviewed the case file and video in the excessive force case involving Hay. (Id. ¶ 100, Ex. X.) Hay was booked for public intoxication and suffered a broken arm. (Id. ¶ 119.) Hay filed a citizen complaint in January of 2001 and a civil action in April 2001. (Id. ¶ 128.) In January of 2002 the case settled. (Id.) Twomey declared that after the case settled, the deputies involved were punished, but not for the use of excessive force and no retraining on use of force was ordered. (Id. ¶¶ 128, 130, Ex. 4.) Twomey declared the IA file was signed by upper level management, even though the video obviously shows excessive force and negates any alleged justification for the use of force. (Id. ¶ 130, 186.) The Commander of the Main Jail admitted to viewing the video and concluded the use of force on Hay was appropriate. (Id. ¶ 146.)

Twomey further declared there were other clues of excessive force in the Hay file ignored by those who signed off on it, which suggests the chain of command ignored hints of use force. (Id. ¶ 192-93, 427, 457.) One officer, Ramos, who was involved in the incident testified during the IA interview that he hears a popping sound 60%-70% of the time he applies the felony wrist lock, although Twomey says this means he is applying the technique incorrectly. (Id. ¶¶ 147-8.) Captain Kelly's report informed Ramos that the popping sound should not be heard but again, no discipline or retraining was ordered. (Id. ¶¶ 149-50.)

Twomey further declared that in the Hay video a nurse can be heard warning Hay "they like to hurt people around here" as Hay argued he did nothing wrong. (Id. ¶ 191.) Shortly thereafter in the video, a deputy can be seen making a "shadow boxing" gesture as Hay has his back turned, suggesting to Twomey that he meant that Hay was about to

10

be subject to force. (Id. ¶¶ 192-3.) Twomey declared that despite this video evidence, the administrative summary makes no reference to these aspects of the video, did not interview the nurse or the deputy making the hand motions.

Twomey infers a policy of excessive force existed in part from his opinion that the Sheriff's Department does not investigate all claims of abuse that are brought to the attention of management. (Id. ¶ 567.)

Plaintiffs' evidence is sufficient to create a genuine issue of material fact as to whether there was a "widespread" policy or custom of excessive force at the Main Jail in the form of using unauthorized control holds in situations where force was not justified, and as to whether such a policy was "longstanding," and as to whether Sheriff Department officials were aware of past incidents of this type of excessive force but did not reprimand or retrain the deputies involved. Therefore, the County's motion for summary adjudication of Plaintiffs' third claim is denied.

B. Against Blanas in His Individual Capacity

Blanas argues he is entitled to summary judgment because "Plaintiffs have no evidence and do not even allege that he personally participated in violating their constitutional rights . . . ." (Mot. at 9-12.) Plaintiffs counter that the declaration of Twomey demonstrates that "Blanas is liable in his individual capacity for his 'action or inaction in the training, supervision, or control of his subordinates' and because he 'condoned, ratified and encouraged' the unconstitutional actions of his subordinates." (Opp'n at 3:5-8, 4:3-8 (citing Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987)) (quoting

11

1 Larez v. City of L.A., 946 F.2d 630, 646 (9th Cir. 1991).)  Blanas
2 rejoins

> there is no evidence that Blanas . . . approved or ratified use of force against either Hunter or Eley, but in fact, the Deputy involved in the incident with Eley was terminated as a result of the incident. . . . Additionally, plaintiffs' expert Twomey asserts that while defendant Blanas was Sheriff, Internal Affairs investigations were typically reviewed by a Deputy Chief as opposed to the Sheriff.

(Reply at 2:4-8 (citing Dull Decl.; Towmey Decl. ¶¶ 408-412, 417-420).)

Blanas is exposed to liability "in his individual capacity if he set[] in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably should [have] know[n], would cause others to inflict the constitutional injury." Id. (internal quotations omitted).  Under this standard, Blanas is exposed to liability in his personal capacity for his "'own culpable action or inaction in the training, supervision, or control of his subordinates,' for his 'acquisce[nce] in the constitutional deprivations of which [the] complaint is made,' or for conduct that showed a 'reckless or callous indifference to the rights of others.'" Larez, 946 F.2d at 646 (quoting first Clay, 815 F.2d at 1170) (quoting second Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988)) (quoting third Bordanaro v. McLeod, 871 F.2d 1151, 1163 (1st Cir. 1989)).

> When an official's personal liability is premised upon failure to remedy known constitutional violations or failure to adequately supervise or train subordinates, the plaintiff must shown that: 1. The official received "notice of a pattern of unconstitutional acts" committed by subordinates; 2. The official "demonstrated deliberate indifference [to] or tacit authorization of the offensive acts"; 3. The official failed to take sufficient "remedial" action; and 4. The

12

1         official's failure proximately caused injury to
2         plaintiff.

3 Doe "A" v. Special Sch. Dist., 682 F. Supp. 451, 453 (E.D. Mo. 1988)
4 (citing Wilson v. City of N. Little Rock, 801 F.2d 316, 322 (8th Cir.
5 1986) and Clay, 815 F.2d at 1170).

6       Twomey opines that Blanas ratified a policy of tolerating
7 excessive force. Twomey declared that "the Chief Deputy is typically
8 the ultimate decision making authority in determining whether use of
9 force is appropriate when discipline is NOT recommended — it stops
10 with him, and thus ratified by the Sheriff." (Twomey Decl. ¶ 408.)
11 However, this opinion is wholly conclusory and lacks any statement of
12 factual basis (as required by Federal Rule of Civil Procedure 56(e))
13 for how the Sheriff ratified a use of force determination that he did
14 not review. Twomey further declared "[T]he Captains, and primarily
15 the Chief Deputies make policy regarding the minimum threshold on the
16 use of force, not the Sheriff, and that the Sheriff simply turns a
17 blind eye to the decisions and policies implemented by his subordinate
18 staff; hence ratifying their decisions." (Id. ¶ 409.) However, this
19 statement is insufficient to establish ratification by Blanas as
20 Twomey gives no indication that Blanas knew or reasonably should have
21 known that the policies set by the Chief Deputies were
22 unconstitutional.

23       Elsewhere in his declaration, Twomey opines that Blanas was
24 put on notice of a pattern of unconstitutional acts because the Hay
25 Afshar and Constantin videos, which Twomey opines clearly show
26 excessive force, became public. Twomey declared
27         when the videos of the [Michael] Hay, [Jafar]
        Afshar and [Mihaita] Constantin beatings surfaced,
28         Defendant Blanas . . . has then Undersheriff
        McGinnis appear on KCRA Channel 3, downplaying

13

>            excessive force at the Jail in 2005. . . . I
>            worked for an Undersheriff in past
>            administrations, and there is no way Undersheriff
>            McGinnis would make the appearance he did on TV
>            and Radio without the express approval of the
>            Sheriff.  And if the Sheriff were to claim that he
>            did not view the video tapes of Hay and Constantin
>            (he admitted to viewing the Afshar video on TV,
>            first broadcast on the Hispanic Channel) he would
>            either by lying or purposely refusing to view the
>            videos to insulate himself from liability though
>            he has the express duty to know if his deputies
>            are involved in excessive force when the issue
>            becomes public.

(Id. ¶¶ 106-08.)  (See also id. ¶ 474 ("Sheriff Blanas was seen by me on Television reviewing the Afshar video, and not taking any action.  All he said was that was not suppose to happen."), ¶ 490 ("[B]ecause of extensive press coverage, Defendant Blanas cannot claim he did not know.").  However, these statements do not establish that Blanas should have credited these allegations of excessive force or should have independently viewed the videos to make a determination of whether excessive force was involved since Twomey admits that Blanas delegated that authority to the Chief Deputies.  Twomey declared that Blanas only viewed one of the videos, and one instance of excessive force does not make a "pattern."

Accordingly, insufficient evidence exists for a jury to reasonably find that Blanas knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injuries alleged by Plaintiffs.  Therefore, Blanas's motion for summary adjudication of Plaintiffs' third claim against him in his individual capacity is granted.

///

///

14

1  II.  Fourth Claim

2          Defendants seek summary adjudication of Plaintiffs' fourth
3  claim arguing that "Main Jail Operations Order 4/250, covering access
4  to telephones by arrestees, requires . . . at least three phone calls
5  be allowed."[3]  (Mot. at 8:4-6.)[4]  Plaintiffs argue that the
6  declarations of Twomey, Hunter, and Eley "create[] a triable issue of
7  fact on this issue as well, under both <u>Monell</u> and Defendant Blanas'
8  individual liability.  It is very clear that there was no policy in
9  effect allowing arrestees to three phone calls."  (Opp'n at 4:16-21.)
10 Defendants rejoin:

> Contrary to the declaration of Twomey, the
> declarations of Hunter and Chase do not refer to
> lack of telephone access.  The only reference to
> such an incident is in the Eley declaration[,] a
> single incident for which municipal liability
> cannot attach. [And] there is no evidence that
> [Blanas] personally participated in or approved
> restricting telephone access.

16 (Reply at 3:23-4:3.)

17         Eley declares "At the time I was booked into the main jail,
18 I was not given access to a telephone for approximately 20 hours.  The
19 phones that were available did not work."[5]  (Eley Decl. ¶ 3.)  Hunter

---

[3] Defendants further argue that Eley "was not an arrestee, but incarcerated as an inmate to the time of the incident. . . . Thus, the requirements of telephone access do not apply."  (Mot. at 8:6-8.) However, Eley's declaration concerns events that occurred "at the time [he] was booked into the main jail . . . ."  (Eley Decl. ¶ 3.)

[4] Plaintiffs contends this evidence is irrelevant because the policies had not been shown to be in effect at the time of Plaintiffs' detentions.  However, sufficient evidence establishes that they were in effect in 2004 and 2005.  (Supp. Douglas Decl. ¶ 3.)  Accordingly, Plaintiffs' objection is overruled.

[5] Eley also declared "[s]ome of the other inmates I have talked to also told me that they were not allowed to make any phone calls until
(continued...)

1  declared that while he was at the Main Jail, he "feared for [his] life
2  and safety if [he] were to ask to use a phone or obtain medical
3  treatment."  (Hunter Decl. ¶ 32.)  Twomey declared "[a]ll the
4  individuals noted in the videos were NEVER given access to a phone.
5  From all the evidence I reviewed, I have not reviewed a single
6  statement or reviewed a single video that arrestees are provided
7  access to a working telephone while going through booking as required
8  by law."  (Twomey Decl. ¶¶ 559-60.)

9  Twomey reviewed the videos of four individuals, Eley would
10 be one more denial, and even assuming Hunter's fear to ask for a phone
11 violated his rights, these six instances over eight years, without
12 more, are insufficient to establish a widespread policy of denying
13 arrestees access to phone.  Accordingly, Defendants' motion for
14 summary adjudication of Plaintiffs' fourth claim against the County of
15 Sacramento; County of Sacramento, Sheriff's Department and Sheriff
16 McGinnis in his official capacity is granted.  Further, Plaintiffs
17 present no evidence that Blanas knew or should have known of a policy
18 to deny arrestees access to a telephone and thus summary adjudication
19 of Plaintiffs' fourth claim against Blanas is granted in Blanas's
20 favor.

CONCLUSION

22 For the reasons stated, all class action allegations, Doe
23 Defendants and thus claim one, and Defendant William Kevin Sowles and
24 thus claim two are dismissed.  The motion for summary adjudication of
25 Plaintiffs' third claim against the County of Sacramento and Sheriff

---

27  [5](...continued)
almost a day later after they were booked." (Eley Decl. ¶ 4.)
28 Defendants' objection to this statement as hearsay is sustained.
(Objection to Eley Decl. ¶ 1.)

16

1  John McGinnis in his official capacity is denied.  Summary
2  adjudication of Plaintiffs' third claim is granted on behalf of
3  Blanas, and Defendants' motion for summary adjudication of
4  Plaintiffs' fourth claim is granted.
5           IT IS SO ORDERED.
6  Dated:  September 5, 2008

                                    _____
                                    GARLAND E. BURRELL, JR.
                                    United States District Judge