1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

9    ROBERT E. HUNTER, and           No. 2:06-cv-00457-GEB-EFB
     HOWARD ELEY,
10
             Plaintiffs,
11                                    **ORDER REGARDING PLAINTIFFS'**
        v.                            **MOTION FOR ATTORNEY'S FEES**
12
     COUNTY OF SACRAMENTO; SHERIFF
13   SCOTT JONES, in his official
     capacity,
14
             Defendants.
15

16

17           Plaintiffs seek over $400,000.00 in attorney's fees

18   under 42 U.S.C. § 1988 as the prevailing parties following a jury

19   verdict finding that each Plaintiff prevailed on his claim that

20   he was subjected to excessive force in violation of the Fourth

21   Amendment while incarcerated at the Sacramento County Main Jail

22   as a result of a custom or practice of the County of Sacramento.[1]

23   The jury awarded each Plaintiff $1.00 in nominal damages.

24   (Verdict Forms, ECF Nos. 186-187.)

25

26   ───────────────────

27   [1]    Plaintiffs also seek $15,642.35 in costs. Since these costs are the
     subject of a separate Bill of Costs (ECF No. 192), they are not addressed
     herein. (See Decl. of Gary Gorski ¶ 7, ECF No. 196 ("Costs are being taxed
28   separately under the costs bill filed with the court.").)

                                      1

1    Defendants counter that no attorney's fees should be
2  awarded. (Defs.' Opp'n 2:11, ECF No. 206.) Defendants argue:
3  "'[w]hen a plaintiff recovers only nominal damages because of his
4  failure to prove an essential element of his claim for monetary
5  relief, the only reasonable fee is usually no fee at all.'" (Id.
6  2:22-24 (alteration in original) (quoting Farrar v. Hobby, 506
7  U.S. 103, 115 (1992)). In the alternative, Defendants argue that
8  if fees are awarded, they should be reduced significantly "based
9  on the minimal success shown by [Plaintiffs'] nominal award."
10  (Id. at 7:7-23.) Defendants further rejoin that any fees awarded
11  are limited by the Prison Litigation Reform Act ("PLRA") since
12  Plaintiff Eley is a "prisoner" under the PLRA. (Id. at 1:2-2:10.)

13                          **I. BACKGROUND**

14    Plaintiffs initiated this action on March 3, 2006,
15  alleging five claims against six named defendants. (See Compl.,
16  ECF No. 1.) After decision on two Federal Rule of Civil Procedure
17  ("Rule") 12(b)(6) dismissal motions and a motion for summary
18  judgment, one claim remained: the alleged use of excessive force
19  against each Plaintiff in violation of the Fourth Amendment as a
20  result of an official custom or practice ("Monell claim").

21    Trial on each Plaintiff's Monell claim began on
22  November 4, 2008, and the jury returned its verdict on November
23  13, 2008. The jury was given general verdict forms which asked
24  whether each Plaintiff prevailed on his Monell claim, and, if so,
25  what amount of damages was caused by the County. The jury
26  answered the first question "No" on each Plaintiff's verdict
27  form. (Verdict Forms, ECF No. 115-116.)

28

1    Plaintiffs appealed, arguing, *inter alia*, that certain
2    jury instructions should have been given at trial and that the
3    refusal to give those instructions was prejudicial. Hunter v.
4    Cnty. of Sacramento, 65 F.3d 1225 (9th Cir. 2011). On appeal, the
5    Ninth Circuit held that the jury was inadequately instructed on
6    the Monell claim, "vacate[d] the judgment[,] and remand[ed] for a
7    new trial." Id. at 1236.

8    The case was retried on February 26, 2013, through
9    February 28, 2013, and the jury returned its verdict on March 1,
10   2013. The jury decided that each Plaintiff prevailed on his
11   Monell claim, and awarded each Plaintiff $1.00 in nominal
12   damages. (Verdict Forms, ECF Nos. 186-187.) Judgment was entered
13   "in accordance with the jury verdict" on March 4, 2013. (ECF No.
14   188.)

15   Plaintiffs subsequently sought to amend the judgment
16   "to include Findings of Fact and Conclusions of Law, and a
17   Permanent Injunction." (Pls.' Mot. to Amend J. 1:25-27, ECF No.
18   194.) That motion was denied on August 8, 2013. (Order Den. Pls.'
19   Mot. to Amend J., ECF No. 212.)

20                          **II. LEGAL STANDARD**

21   "The general rule in our legal system is that each
22   party must pay its own attorney's fees and expenses . . . ."
23   Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 550 (2010).
24   However, "[s]ection 1988 provides that a prevailing party in
25   certain civil rights actions may recover 'a reasonable attorney's
26   fee as part of the costs.'" Id. (quoting 42 U.S.C. § 1988(b)).
27   "The purpose of § 1988 is to ensure effective access to the
28   judicial process for persons with civil rights grievances.

3

1    Accordingly, a prevailing plaintiff should ordinarily recover an

2    attorney's fee unless special circumstances would render such an

3    award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)

4    (internal quotation marks and citation omitted).

5           "To determine the amount of a reasonable fee under §

6    1988, district courts typically proceed in two steps. First,

7    courts generally 'apply . . . the lodestar method to determine

8    what constitutes a reasonable attorney's fee.'" Gonzalez v. City

9    of Maywood, --- F.3d ----, 2013 WL 4779669, at *3 (9th Cir. 2013)

10   (alteration in original) (quoting Costa v. Comm'r of Soc. Sec.

11   Admin., 690 F.3d 1132, 1135 (9th Cir. 2012)). "Second, '[t]he

12   district court may then adjust [the lodestar amount] upward or

13   downward based on a variety of factors.'" Id. (alteration in

14   original) (quoting Moreno v. City of Sacramento, 534 F.3d 1106,

15   1111 (9th Cir. 2008).

16   **A.    Lodestar Figure**

17          In calculating the lodestar figure, "the district court

18   'multiplies the number of hours the prevailing party reasonably

19   expended on the litigation by a reasonable hourly rate.'"

20   Gonzalez, 2013 WL 4779669, at *3 (quoting Ballen v. City of

21   Redmond, 466 F.3d 736, 746 (9th Cir. 2006)).

22          "Ultimately, a 'reasonable' number of hours equals

23   '[t]he number of hours . . . [which] could reasonably have been

24   billed to a private client.'" Gonzalez, 2013 WL 4779669, at *4

25   (alteration in original) (quoting Moreno, 534 F.3d at 1111)).

26   Hours "that are excessive, redundant, or otherwise unnecessary"

27   should be excluded. Hensley, 461 U.S. at 436.

28

1    "The [moving] party has the burden of submitting

2    billing records to establish that the number of hours it has

3    requested are reasonable. Thus, . . . the district court should

4    begin [its inquiry] with the billing records the prevailing party

5    has submitted." <u>Gonzalez</u>, 2013 WL 4779669, at *4. "The party

6    opposing the fee application [then] has a burden of rebuttal that

7    requires submission of evidence to the district court challenging

8    the accuracy and reasonableness of the hours charged or the facts

9    asserted by the prevailing party in its submitted affidavits."

10   <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1397-98 (9th Cir. 1992).

11       The reasonable hourly rate is "calculated according to

12   the prevailing market rates in the relevant legal community, and

13   the general rule is that the rates of attorneys practicing in the

14   forum district, here the Eastern District of California-

15   Sacramento, are used." <u>Gates</u>, 987 F.2d at 1405 (citation

16   omitted). "Within this geographic community, the district court

17   should 'tak[e] into consideration the experience, skill, and

18   reputation of the attorney . . . ." <u>Gonzalez</u>, 2013 WL 4779669, at

19   *6 (first alteration in original) (quoting <u>Dang v. Cross</u>, 422

20   F.3d 800, 813 (9th Cir. 2005)).

21       "'[T]he burden is on the fee applicant to produce

22   satisfactory evidence—in addition to the attorney's own

23   affidavits—that the requested rates are in line with those

24   prevailing in the community for similar services by lawyers of

25   reasonably comparable skill, experience and reputation.'" <u>Camacho</u>

26   <u>v. Bridgeport Fin., Inc.</u>, 523 F.3d 973, 980 (9th Cir. 2008)

27   (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11 (1984)).

28   "Affidavits of the plaintiffs' attorney and other attorneys

1  regarding  prevailing  fees  in  the  community,  and  rate

2  determinations in other cases . . . are satisfactory evidence of

3  the prevailing market rate." United Steelworkers of Am. v. Phelps

4  Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990); see also Ingram

5  v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011) (indicating a

6  district court may "rely on its own familiarity with the legal

7  market" in determining a reasonable hourly rate).

8  **B.   Adjustments to Lodestar Figure**

9       Calculating the lodestar figure "does not end the

10  inquiry." Hensley, 461 U.S. at 434. "[T]he court may increase or

11  decrease the lodestar [amount] based on factors identified by

12  th[e Ninth C]ircuit in Kerr v. Screen Extras Guild, Inc., 526

13  F.2d 67, 70 (9th Cir. 1975), cert. denied, 425 U.S. 951, 96 S.Ct.

14  1726, 48 L. Ed. 2d 195 (1976), that are not subsumed within the

15  initial calculation of the lodestar." D'Emanuele v. Montgomery

16  Ward & Co., Inc., 904 F.2d 1379, 1383 (9th Cir. 1990), overruled

17  on other grounds by Burlington v. Dague, 505 U.S. 557 (1992); see

18  also Perdue, 559 U.S. at 553-54. ("[T]here is a 'strong

19  presumption' that the lodestar figure is reasonable, but that

20  presumption may be overcome in those rare circumstances in which

21  the lodestar does not adequately take into account a factor that

22  may properly be considered in determining a reasonable fee.").

23  One such factor is "the 'results obtained.' This factor is

24  particularly crucial where a plaintiff is deemed 'prevailing'

25  even though he succeeded on only some of his claims for relief."

26  Hensley, 461 U.S. at 434.

27         In such cases, the district court must apply
           a two-part analysis. First, the court asks
28         whether the claims upon which the plaintiff

6

failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." [Hensley, 461 U.S. at 43]. If the plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only 'partial or limited success' was obtained, full compensation may be excessive. Such decisions are within the district court's discretion.

Thorne v. City of El Segundo, 802 F.2d 1131, 1141 (9th Cir. 1986) (citation omitted); accord Thomas v. City of Tacoma, 410 F.3d 644, 649-50 (9th Cir. 2005). "At the heart of this inquiry is whether Plaintiff[s'] 'accomplishments . . . justify the fee amount requested.'" Thomas, 410 F.3d at 650 (quoting Thorne, 802 F.2d at 1142).

### III. DISCUSSION

A.   **Whether Plaintiffs Are Entitled to Any Award of Attorney's Fees**

Plaintiffs argue:

As the prevailing part[ies] in this action, Plaintiffs' attorneys are entitled to reasonable attorney's fees. Because Plaintiff[s] achieved the benefit sought by bringing suit, Plaintiffs have crossed the 'statutory threshold' to a fee award. In [c]onstitutional challenges to policy or statute, success is measured not only by the amount of the recovery, but also in terms of the importance of the constitutional litigation. There is no doubt that the action brought about the exact result sought by Plaintiff — a finding that the County Jail has had a longstanding policy of using excessive force.

(Pls.' Mot. for Att'y Fees ("Pl.'s Mot.") 5:11-17, ECF No. 195.)

7

1   Defendants counter that in order for a "'district court
2  . . . to award fees after a judgment for only nominal damages, it
3  must point to some way in which the litigation succeeded, in
4  addition to obtaining a judgment for nominal damage[s].'" (Defs.'
5  Opp'n 3:23-4:2 (quoting <u>Wilcox v. City of Reno</u>, 42 F.3d 550, 555
6  (9th Cir. 1994)). Defendants argue that application of the
7  factors used "in determining whether a plaintiff succeeded in
8  some way beyond the judgment for nominal damages . . . shows that
9  [P]laintiffs have not carried their burden." (<u>Id.</u> at 4:2-11.)

10   "[A] plaintiff who wins nominal damages is a prevailing
11  party under § 1988." <u>Farrar</u>, 506 U.S. at 113. "That does not,
12  however, mean that such a plaintiff is necessarily entitled to an
13  award of fees." <u>Benton v. Or. Student Assistance Comm'n</u>, 421 F.3d
14  901, 904 (9th Cir. 2005) (citing <u>Farrar</u>, 506 U.S. at 112). "In
15  some circumstances, even a plaintiff who formally 'prevails'
16  under § 1988 should receive no attorney's fees at all. A
17  plaintiff who seeks compensatory damages but receives no more
18  than nominal damages is often such a prevailing party." <u>Farrar</u>,
19  506 U.S. at 115. Therefore, "[i]f a district court chooses to
20  award fees after a judgment for only nominal damages, it must
21  point to some way in which the litigation succeeded, in addition
22  to obtaining a judgment for nominal damage." <u>Wilcox</u>, 42 F.3d at
23  555 (emphasis in original).

24   There are three factors a district court
25   should consider in determining whether a
     plaintiff succeeded in some way beyond the
26   judgment for nominal damages. First, the
     court should consider "[t]he difference
27   between the amount recovered and the damages
     sought," which in most nominal damages cases
28   will disfavor an award of fees. <u>Farrar</u>, 506
     U.S. at 121 (O'Connor, J., concurring).

> Second, the court should consider "the significance of the legal issue on which the plaintiff claims to have prevailed." <u>Id.</u> Third, the court should consider whether the plaintiff "accomplished some public goal." <u>Id.</u> We have approved of the consideration of these factors in nominal damages cases. <u>Cummings v. Connell</u>, 402 F.3d 936, 947 (9th Cir. 2005); <u>Benton</u> [v. Or. Student Assistance Comm'n, 421 F.3d 901, 905-06 (9th Cir. 2005)]. We have held that "[w]here the district court properly has weighed [these three] factors, the resulting award [of attorney's fees] is not an abuse of its discretion." <u>Cummings</u>, 402 F.3d at 947.

<u>Mahach-Watkins v. Depee</u>, 593 F.3d 1054, 1059 (9th Cir. 2010).

Here, "although the jury awarded no compensatory damages" to either Plaintiff, which "weigh[s] against a fee award[,]" the other two <u>Farrar</u> factors weigh in favor of a fee award. "In contrast to the injury to a business interest alleged in <u>Farrar</u>," Plaintiffs' <u>Monell</u> claim involves the unconstitutional use of force, which "has the level of significance required to tip this factor in favor of awarding reasonable fees." <u>Butler v. Frett</u>, No. 99-4367(RBK), 2006 WL 1806412, at *6 (D.N.J. June 29, 2006) (awarding attorney's fees under § 1988 when the plaintiff prevailed on his claim that an officer failed to prevent the use of excessive force by another unidentified officer and the jury awarded $1.00 in nominal damages); <u>see also</u> <u>Wilcox</u>, 42 F.3d at 556-57 (upholding award of attorney's fees in action where the jury found the entity defendant had a policy which resulted in the use of excessive force against plaintiff and awarded nominal damages); <u>Guy v. City of San Diego</u>, 608 F.3d 582, 588-90 (9th Cir. 2010) (reversing the district court's decision not to award attorney's fees when the plaintiff prevailed on his excessive force claim and was awarded

1   nominal damages).

2        Further, "the judgment that [a County practice or

3   custom] was unconstitutional will benefit [the public] by

4   preventing the [County] from reverting to [such a custom or

5   practice] in the future." <u>Wilcox</u>, 42 F.3d at 556-57; <u>see also</u>

6   <u>Mahack-Watkins</u>, 593 F.3d at 1063 (stating that verdict in the

7   plaintiff's favor on excessive force and wrongful death claims

8   "served the public purpose of helping to protect [persons like

9   the decedent] from being subjected to similar unlawful treatment

10  in the future"). "It is logical to expect, in the face of this

11  jury verdict, that the [County] w[ill] take a closer look at [its

12  practices concerning the] level of force used by its [officers in

13  the Sacramento County Main Jail]. Such a result . . . justif[ies]

14  some amount of . . . attorney fees." <u>Guy</u>, 608 F.3d at 590.

15  **B.   Amount of Attorney's Fees**

16       Plaintiffs request fees totaling $416,605.00,

17  comprising 1190.30 hours billed at $350.00 per hour.

18       **1)   Lodestar Calculation**

19            **a)   Reasonable Hours Expended**

20       Plaintiffs filed the declarations of attorneys Gary

21  Gorski and Daniel Karalash in support of their fee request. Mr.

22  Gorski avers he spent a total of 1177.30 hours on this action

23  (Decl. of Gary Gorski ("Gorski Decl.") ¶ 7; Supplemental Decl. of

24  Gary Gorski ("Suppl. Gorski Decl.") ¶ 17, ECF No. 209.) Mr.

25  Gorski further avers, in relevant part:

26            Since the beginning of this action, I
           have meticulously kept track of my hours of
27         service as demonstrated by [my] detailed
           billing statement. . . . The information
28         contained therein is true and correct, and

                              10

1
2
3
4
5

accurately represents the work performed, and
time taken to perform said work. The time and
activity was inputted at the time the service
was provided, or shortly thereafter.[] Since
there was a symbiotic relationship between
all causes of action and the parties, and
that the primary goal was to prevail on the
Monell claim, there is no doubt success was
achieved.

6
7
8
9

Based upon the foregoing and in my
opinion, each and every item in the billing
charges submitted by me would have been
undertaken by a reasonable and prudent lawyer
to advance or protect my client's
interests . . . .

10 (Gorski Decl. ¶¶ 56-57 (paragraph nos. omitted).) Mr. Karalash

11 declares he spent a total of 13 hours on this case. (Decl. of

12 Daniel Karalash ("Karalash Decl.") ¶ 3, ECF No. 197.)

13      Defendants raise a number of objections to Plaintiffs'

14 claimed hours. Specifically, Defendants argue the time spent "on

15 the various incarnations of the complaint," expert-related

16 billings, and trial preparation is excessive; the hours spent on

17 law and motion should be reduced to reflect Plaintiffs' limited

18 success on the motions; time related to a unrelated judgment lien

19 against Plaintiffs' counsel should be excluded; time transporting

20 Plaintiffs' expert to and from the airport should be excluded;

21 and no fees should be allowed for the "non-attorney nature of the

22 work claimed" by Mr. Karalash. (Defs.' Opp'n at 8:26-12:18.)

23 Defendants' arguments are addressed in turn.

24                    **i)   Excessive Hours**

25      Defendants' argument that time spent on various tasks

26 is excessive is conclusory and is unpersuasive.

27      "In general, courts 'should defer to the winning

28 lawyer's professional judgment as to how much time he was

11

required to spend on the case.'" <u>Hiken v. Dept. of Def.</u>, No. C 06-02812 JW, 2012 WL 3686747, at *7 (N.D. Cal. Aug. 21, 2012) (quoting <u>Moreno</u>, 534 F.3d at 1112); <u>accord</u> <u>Knox v. Chiang</u>, No. 2:05-cv-02198-MCE-CKD, 2013 WL 2434606, at *4 (E.D. Cal. June 5, 2013). "An attorney's sworn testimony as to the amount of time required to perform a task 'is evidence of considerable weight on the issue of the time required.'" <u>Hiken</u>, 2012 WL 3686747, at *7 (quoting <u>Blackwell v. Foley</u>, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010)). For courts to deny compensation for a task, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." <u>Id.</u> "It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee." <u>Moreno</u>, 534 F.3d at 1112.

Here, Defendants "have not tethered any evidence" to their general objection that "the amount of hours billed are objectively unreasonable . . . ." <u>L.H. v. Schwarzenegger</u>, 645 F. Supp. 2d 888, 898 (E.D. Cal. 2009); <u>accord</u> <u>Butler</u>, 2006 WL 1806412, at *9 (stating "other than to label [certain] hours as 'excessive,' the [opposing party] does not present any argument or explanation to suggest that these hours were not reasonably expended"). "By contrast, Mr. [Gorski] has submitted a sworn affidavit attesting to the fact that the hours listed in his entries [represents the work performed and the time taken to perform said work]." <u>Butler</u>, 2006 WL 1806412, at *9.

For the stated reasons, "the Court finds that the claimed hours . . . do not warrant a reduction for

1    excessiveness." Id.

2                    **ii)  Unsuccessful Law & Motion**

3              Defendants argue the hours Plaintiffs spent opposing
4    their dismissal and summary judgment motions should be reduced to
5    reflect Plaintiffs' limited success in opposing such motions.
6    (Defs.' Opp'n 10:12-11:8.) However, since it is "impossible to
7    isolate" the amount of time Plaintiffs' counsel spent
8    successfully opposing certain portions of Defendants' motions
9    from the time spent unsuccessfully opposing other portions
10   thereof, any reductions made to reflect the Plaintiffs' limited
11   success will be included in the later adjustment to the lodestar
12   value. Webb v. Sloan, 330 F.3d 1158, 1169 (9th Cir. 2003).

13             Defendants also argue that since "[P]laintiffs [wer]e
14   not entitled to injunctive relief[,]" all time spent prosecuting
15   Plaintiffs' motion to amend the judgment to include injunctive
16   relief should be excluded. Since the time spent prosecuting this
17   unsuccessful motion can be isolated, it is excluded from the
18   lodestar calculation. The 36.5 hours spent in connection with
19   this motion on March 2, March 3, March 5, March 23, March 24,
20   March 30, and April 1, 2013 are excluded. (See Billing Invoice
21   21, 22, Gorski Decl., Ex. B, ECF No. 196-2.)

22                      **iii) Judgment Lien**

23             Defendants object to the inclusion of "hours . . .
24   claimed for work related to a [judgment] lien filed by the County
25   of Yolo" against Messrs. Gorski and Karalash. Review of the
26   docket evinces that the referenced judgment lien concerns an
27   unrelated Yolo County Superior Court case, Lancaster v. County of
28   Yolo, Case No. CV07-1551. (See Notice of Lien, ECF No. 139.)

1    Therefore, the 6.9 hours billed on August 11, 2011, and January

2    13, 2012, in connection with that lien are excluded.

3                        **iv) Expert's Airport Transportation**

4           Defendants also object to time billed "for travel time

5    to pick up and return [Plaintiff's] expert to the airport."

6    (Defs.' Opp'n 10:2-6.)

7           In determining whether travel time should be

8    compensated, "[t]he central inquiry is whether the time sought is

9    reasonable." Transbay Auto Serv., Inc. v. Chevron U.S.A., Inc.,

10   No. C 09-04932 SI, 2013 WL 843036, at *7 (N.D. Cal. Mar. 6,

11   2013); see also Cotton v. City of Eureka, 889 F. Supp. 2d 1154,

12   1177 (N.D. Cal. 2012) (indicating a moving party "may recover

13   fees for reasonably expended travel time").

14          On January 7, 2013, Plaintiffs' counsel picked up

15   Plaintiffs' expert witness from the airport; however, his billing

16   entry for that time also included "me[eting] with expert, [and

17   d]iscuss[ing] case." (Billing Invoice 15.) Therefore, this travel

18   time is not excluded as unreasonable. See Transbay Auto Service,

19   Inc., 2013 WL 843036, at *7 (declining to reduce attorney's fees

20   for travel time that included other tasks). However, the 5.3

21   hours billed on January 11, February 19, 2013, and March 5, 2013,

22   appears to reflect only time spent transporting Plaintiffs'

23   expert to or from the airport. This time is unnecessary and

24   should not have been included in the "exercise [of] billing

25   judgment." Hensley, 461 U.S. at 434 (stating "[h]ours that are

26   not properly billed to one's client, also are not properly billed

27   to one's adversary"). Therefore, the referenced 5.3 hours are

28   excluded.

14

1

### v)   Mr. Karalash's Time

2        Defendants argue "[n]o fees should be allowed" for Mr.

3   Karalash's "non-specific claims for 'taking notes' and 'proof

4   reading.'" (Defs.' Opp'n 12:26-13:5.) In the alternative,

5   Defendants argue if his time is compensated, "the hourly rate

6   should reflect the non-attorney nature of the work claimed to

7   have been done." (Id. at 13:3-4.)

8        Mr. Karalash avers that his "involvement [in this

9   action] was minimal," and that he "was retained by Mr.

10  Gorski . . . more as a back-up in case he had a conflict."

11  (Karalash Decl. ¶ 2.) Mr. Karalash further declares that he

12  "spent the following hours on this case: 8 – hours proof reading

13  Plaintiffs' Opposition to Motion for Summary Judgment[,] . . . 2

14  – hours proof reading Plaintiffs' Appellate Brief[, and] 3 –

15  hours on the second day of testimony of Expert Witness David

16  Orsay taking notes." (Id. at ¶ 3.)

17       Since the referenced tasks are "clerical" in nature,

18  they "are not properly reimbursable in a section 1988 fee award."

19  Frevach Land Co. v. Multnomah Cnty., Dept. of  Envir. Servs., No.

20  CV-99-1295-HU, 2001 WL 34039133, at *12 (D. Or. Dec. 18, 2001)

21  (deducting from a fee award "all time which is primarily

22  secretarial or clerical in nature[,]" including proofreading);

23  see also S.A. v. Patterson Joint Unified Sch. Dist., No. 1:10-cv-

24  00943-OWW-SKO, 2010 WL 3069204, at *6 (recommending attorney's

25  fees be reduced for time spent taking notes at a hearing, stating

26  "notetaking is essentially a clerical function"), report and

27  recommendation adopted in full, No. 1:10-cv-00943-OWW-SKO (E.D.

28  Cal. Sept. 10, 2010). Therefore, all of Mr. Karalash's time is

1  excluded.

2          For the stated reasons, Plaintiffs' claimed hours are

3  reduced by 61.7 hours as follows:

4          36.5 Hours -   work related to prosecution of motion to

5                         amend judgment to include injuctive

6                         relief

7          6.9 Hours -    judgment lien

8          5.3 Hours -    travel time taking expert to or from

9                         airport

10         13 Hours -     Mr. Karalash's hours

11         **b)    Reasonable Hourly Rate**

12         Plaintiffs request an hourly rate of $350.00 per hour,

13  arguing such a rate "is supported by [Mr. Gorski's] experience,

14  prior awards, the type of services provided, and customary rates

15  for similar attorneys in the region." (Pls.' Mot. 9:23-27.) Mr.

16  Gorski declares in support of his fee request, in relevant part,

17  as follows:

18              I graduated from California State
        University, Sacramento in 1988 and Widener
19      University, School of Law (formerly Delaware
        Law School) in the Spring of 1991. I was
20      first admitted to practice law in the
        November 1991 in the Commonwealth of
21      Pennsylvania. I am a solo practitioner, and
        have been since 1995. I passed both the
22      California and Pennsylvania bar exams on my
        first attempt.
23
                The breadth of my practice has involved
24      not only similar actions such as the present
        matter, but also a wide panoply of complex
25      litigation matters in both state and federal
        court, which has lead [sic] to a variety of
26      published opinions . . . .

27              My entire legal career has been devoted
        to trial practice. I have handled a broad
28      range of cases involving both state and

16

> federal law including, but not limited to, unfair business[] competition, construction litigation, deceptive trade practices, RICO, defamation, Bivens actions, 42 U.S.C. § 1983, Title VII, ADA, FEHA, Privacy Act (5 U.S.C. § 552a), FOIA (5 U.S.C § 552), and various state negligence and contract actions.
>
> . . . .
>
> During my legal career, I have been personally responsible for approximately 750 legal files in which an adversarial action was commence by way of a criminal complaint, lawsuit, arbitration notice, or administrative action.
>
> I have personally tried approximately 85 cases in my legal career, and co-chaired on an additional 35 (approximately).
>
> I have litigated approximately 105 cases by way of arbitration or administrative proceedings.

(Gorski Decl. ¶¶ 9-11, 20-22 (paragraph nos. omitted).)

Defendants rejoin that attorney's fees "should not exceed [a rate of] $250.00/hr." (Defs.' Opp'n 13:7-8.) Defendants filed the Declaration of Andrea Miller, a local civil rights attorney, in support of their opposition. Ms. Miller avers: "it is [her] opinion . . . that $350.00 per hour is the appropriate prevailing rate awarded to the most experienced attorneys in this district on a contested fee motion." (Decl. Andrea Miller ¶ 9, ECF No. 206-1.) Ms. Miller further declares that Mr. Gorski's "hourly rate should probably not exceed $250" per hour, given his experience "and the lack of unique issues or extra ordinary complexity" trying this action. (Id. ¶ 13.)

However, in light of recent § 1988 fee awards issued in the Eastern District of California – Sacramento, and Mr. Gorki's nearly 22 years of experience as a litigator, the requested rate

1   of $350.00 per hour is reasonable. See e.g. Knox, 2013 WL
2   2434606, at *8 (awarding $450.00 per hour in a § 1983 case as
3   "the hourly rate at the top of the compensation range that exists
4   in the Sacramento legal market"); H.W. ex rel. Nelson v. E.
5   Sierra Unified Sch. Dist., No. CIV S-11-0531 GEB GGH, 2012 WL
6   4469262, at *2 (E.D. Cal. Sept. 27, 2012) (awarding $350.00 per
7   hour in § 1983 case to attorneys with eleven and twelve years
8   experience), report and recommendation adopted in full, No. CIV
9   S-11-0531 GEB GGH, 2012 WL 5013016 (E.D. Cal. Sept. 10, 2010);
10  Jones v. Cnty. of Sacramento, No. CIV S-09-1025 DAD, 2011 WL
11  3584332, at *9 (E.D. Cal. Aug. 12, 2011) (awarding hourly rate of
12  $350.00 in excessive force case to attorney with twenty-four
13  years experience); Beecham v. City of West Sacramento, No. Civ.
14  S-07-1115 JAM EFB, 2009 WL 3824793, at *4 (awarding hourly rate
15  of $375.00 per hour to attorneys with approximately twelve years
16  experience).

17          Accordingly, the lodestar figure is $395,010.00
18  (1128.60 hours x $350.00 / hour).

19      **2)   Adjustment of Lodestar Due to Plaintiffs' Limited**
20          **Success**

21          Defendants contend that any fee awarded "should be
22  reduced by at least 90%" to account for Plaintiff's "minimal
23  success." (Defs.' Opp'n 7:7-22.) Defendants argue:

24              In addition to the Monell claim against
                the County, [P]laintiffs originally sought
25              other relief. Claims in the Second Amended
                Complaint were asserted against the deputy
26              involved in the Eley incident, Kevin Sowles;
                against the former Sheriff, Lou Blanas,
27              personally; on a claim that [P]laintiff
                Hunter was denied access to a telephone; and
28              for the certification of a class for the

                               18

1
2
3
4
5
6

> purposes of a class action. Following
> [D]efendants' motion for summary judgment,
> the only claim that remained was [the Monell
> claim]. In a case involving an award of
> nominal damages, the overall success of the
> plaintiff is a prime consideration in
> determining a fee award. Here, [P]laintiffs
> were unsuccessful or abandoned each claim
> other than the [Monell claim]. The lack of
> success on those claims requires a downward
> adjustment of any fee award.

7    (Id. at 7:25-8:9.)

8         "[T]he extent of a plaintiff's success is a crucial

9    factor in determining the proper amount of an award of attorney's

10   fees under 42 U.S.C. § 1988." Hensley, 461 U.S. at 440. "A

11   reduced fee award is appropriate if the relief, however

12   significant, is limited in comparison to the scope of the

13   litigation as a whole." Id. "[W]here the plaintiff achieved only

14   limited success, the district court should award only that amount

15   of fees that is reasonable in relation to the results obtained."

16   Id. "There is no precise rule or formula for making these

17   determinations. . . . The court necessarily has discretion in

18   making this equitable judgment." Aguirre v. L.A. Unified Sch.

19   Dist., 461 F.3d 1114, 1122 (9th Cir. 2006) (quoting Hensley, 461

20   U.S. at 436-37).

21        Here, Plaintiffs initially brought multiple claims

22   against more Defendants than the single Monell claim against the

23   County of Sacramento that was tried. Further, each Plaintiff was

24   awarded only $1.00 in nominal damages on his successful Monell

25   claim; Plaintiffs did not obtain injunctive or declaratory

26   relief. Under the circumstances, although a finding of Monell

27   liability against the County of Sacramento concerning a practice

28   or custom regarding the use of excessive force in the Sacramento

County Main Jail is certainly not insignificant, a 50% downward adjustment to the lodestar is appropriate to reflect the extent of Plaintiffs' success. See, e.g., Mahach-Watkins v. Depee, No. C 05-1143 SI, 2008 WL 512707, at *3 (N.D. Cal. Feb. 25, 2008) (reducing lodestar by 80% to account for the plaintiff's limited success in obtaining nominal damages on excessive force and wrongful death claims; no Monell claim), aff'd 593 F.3d 1054 (9th Cir. 2010); Beecham, 2009 WL 3824793, at *5 (applying a 50% downward adjustment to lodestar where "there was a large disparity in the amount of damages awarded as compared to the amount sought by" the plaintiffs at trial); Butler, 2006 WL 1806412, at *11 (reducing lodestar by 50% to reflect the plaintiff's "limited degree of success"). Therefore, Plaintiffs' fee award is reduced to $197,505.00.

**C.   Whether the PLRA Limits the Attorney's Fees Awarded**

Defendants argue that any attorney's fees awarded to Eley are limited by the PLRA to 150% of his monetary judgment, i.e., $1.50. (Defs.' Opp'n 1:3-18.) Defendants further argue that because the action was tried jointly on behalf of Hunter and Eley, and separate fee awards per Plaintiff are not sought, any award of attorney's fees must be calculated by "reducing [the total award] by one half plus $1.50, to account for the PLRA limitations" to Eley's award. (Id. 1:20-26.)

The PLRA contains certain limitations on the award of attorney's fees under § 1988 in "any action brought by a **prisoner** who is confined to any jail, prison, or other correctional facility.'" 42 U.S.C. § 1997e(d) (emphasis added). However, assuming Eley is a "prisoner," as defined by the act, it has not

20

1  been shown that the PLRA's attorney's fees limitations apply when

2  an action is commenced by a prisoner and non-prisoner. See Turner

3  v. Wilkinson, 92 F. Supp. 2d 697, 704 (1999) (stating "[s]ince

4  not all of the original plaintiffs were prisoners, the Court does

5  not believe that this case can properly be characterized as a

6  suit 'brought by a prisoner'). Further, even if the PRLA

7  limitations do apply under such circumstances, "the Court

8  perceives of no logical way to separate the attorney['s] fees

9  expended on behalf of the two [P]laintiffs." Id. For example, Mr.

10  Gorski avers:

11          The amount of time spent litigating Mr.
        Eley's claim as compared to Mr. Hunter's is
12      immaterial and virtually impossible to
        separate. Even had Mr. Eley not been a party
13      to the case, I would have still have called
        him as a witness, and used his declaration in
14      opposing summary judgment. Anytime spent
        specifically to his claim, and not Mr.
15      Hunter's is insignificant.

16  (Suppl. Gorski Decl. ¶ 2.)

17          Therefore, the referenced PLRA attorney's fee

18  limitation is not applied to the fee award.

19                          **IV. CONCLUSION**

20          For the stated reasons, Plaintiffs' motion for

21  attorney's fees is granted, in part. Plaintiffs are awarded

22  $197,505.00 in attorney's fees.

23          Dated:October 10, 2013

24                          GARLAND E. BURRELL, JR.
                        Senior United States District Judge

25

26

27

28

                                21